[Cite as *State v. Schafer*, 2026-Ohio-1172.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                         Court of Appeals No.  {86}WM-25-018

      Appellee                                     Trial Court No.  25CR000029

v.

Roger Schafer                                        **DECISION AND JUDGMENT**

      Appellant                                   Decided:

* * * * *

Katharine J. Zartman, Williams County Prosecuting Attorney and
Emil G. Gravelle, III., Williams County Assistant Prosecuting
Attorney, for appellee.

Christopher Bazeley, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Roger Schafer, appeals from a judgment entered by the Williams County Court of Common Pleas convicting him, following a jury trial, on charges of failure to comply with an order or signal of a police officer and driving under suspension or in violation of a license restriction. For the reasons that follow, the trial court's judgment is affirmed in part and reversed in part, consistent with this opinion.

**Statement of the Case and Facts**

{¶ 2} On March 18, 2025, the grand jury indicted Schafer on one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree, with a specification requesting forfeiture of the vehicle, pursuant to R.C. 2941.1417(A); and one count of driving under suspension or in violation of a license restriction, in violation of R.C. 4510.11(A) and (D)(1), a misdemeanor of the first degree. The charges arose from a high-speed police chase that took place in Williams County, Ohio, on March 4, 2025.

**Trial**

{¶ 3} Schafer pleaded not guilty to the charges, and the matter was tried before a jury on July 28, 2025. At trial, the State presented testimony by witnesses Denise Muehlfeld, Philip Muehlfeld, Montpelier Police Lieutenant Jennifer Hern, and Montpelier Police Chief Dan McGee. Schafer testified as the only witness for the defense.

**Denise Muehlfeld**

{¶ 4} Denise Muehlfeld testified that on March 4, 2025, at around 8:30 in the morning, she saw Schafer pull up close to her residence at 212 Misty Lane in his gray SUV. She stated that he got out of his vehicle and proceeded to trim several trees that were on her property. Denise recorded a couple of videos of Schafer's activities and then called the police to complain. The videos were entered into evidence at trial.

2.

**{¶ 5}** Denise testified that Schafer had been her first husband's classmate and was a neighbor who rented a nearby property. She testified that she had seen him in the area near her home on numerous occasions, and that she recognized him in her yard on the day in question. She further testified that she recognized the vehicle he drove on March 4, 2025, as being his vehicle.

**Philip Muehlfeld**

**{¶ 6}** Philip Muehlfeld, Denise Muehlfeld's husband, testified that Schafer lived "about a football field away," at an adjacent property at 1630 Maplehurst Lane. Philip stated that when he saw someone trimming his trees on March 4, 2025, he left the house to confront the individual and to tell him to get off his property. Philip stated that following the encounter, he observed the individual get into a dark gray SUV.

**Lt. Jennifer Hern**

**{¶ 7}** Lt. Jennifer Hern, who was employed with the Montpelier Police Department, testified that on March 4, 2025, at 8:42 a.m., she was called to the Muehlfelds' house on Misty Lane regarding a civil matter. She stated that she remained at the house for approximately 45 minutes, and then she and Chief McGee began to patrol the area looking for Schafer. She testified that she knew Schafer lived at 1630 Maplehurst as the result of prior complaints that she had handled involving him. She stated that although she had never previously met Schafer, she knew what he looked like based on BMV photographs and a video from another complaint.

{¶ 8} Hern testified that on March 4, 2025, she had a chance to view Schafer from a distance of approximately 150 feet, while Schafer was sitting in the driver's seat of his gray Infiniti SUV, which was parked at the end of his driveway at 1630 Maplehurst. She stated that a black dog was in the car with him. At trial, Hern identified the vehicle from photographs of the car parked in Schafer's garage on March 5, 2025. She stated that the car had several unique stickers on its sides. On one side was a sticker of an American flag with the word "Jesus" on it. On the other side was another sticker of an American flag with the word "Jesus" on it, and above the sticker were the letters "US-DOJ."

{¶ 9} According to Hern, Schafer eventually started to drive away, and she and Chief McGee, who were in separate cars, initiated a pursuit of Schafer's vehicle, with their lights and sirens activated. She stated that they drove at speeds of 60 to 70 miles per hour through areas of town -- including past a school -- but, thereafter, went as high as over 100 miles per hour. Eventually, they lost sight of Schafer and ended the chase.

{¶ 10} The next day, Hern and McGee went to the residence at 1630 Maplehurst, where they located and arrested Schafer. Hern testified that the vehicle they had pursued was parked in the garage at the residence and, further, was the subject of the photos that were introduced into evidence at trial. In addition, Hern identified the same gray Infiniti, with "the flag on the side," as being in the videos that were taken at the Muehlfelds' property.

{¶ 11} Hern testified that she interviewed Schafer following his arrest, and that the interview was recorded on her body camera. A portion of the interview was played for

4.

the jury at trial. During the portion of the interview that was played for the jury, Schafer indicated that he had a Department of Justice sticker on his car because "they" called him a "whistleblower." He denied, however, having been involved in a chase with police. He stated that he had "five" workers working for him and that "someone else" had been driving his car. But he offered no names. Schafer admitted that he had been in Montpelier on March 4, 2025 -- first at the hardware store and then at the bank -- but then stated that he did not have a license, so he had someone else driving him that day, in one of his "seven" trucks.

{¶ 12} Hern testified that she did not inquire further about the possibility of there being another driver of the gray Infiniti on March 4, 2025, because she had seen for herself that it was Schafer who was driving the car.

**Chief Dan McGee**

{¶ 13} Chief Dan McGee testified that immediately after assisting Hern with the civil complaint from Misty Lane, he went to Schafer's residence at 1630 Maplehurst "to produce some follow-up." While stopped at a stop sign at the intersection of Lockhart and Maplehurst, McGee observed Schafer's vehicle pass directly in front of him on Maplehurst. McGee testified that he recognized the vehicle, because he knew that Schafer had a gray SUV and because the American-flag-with-Jesus and US-DOJ stickers on the side made the vehicle "very identifiable." McGee stated that Schafer was approximately 20 feet from him when he drove by, and that he recognized Schafer from a photograph he had seen.

5.

{¶ 14} McGee testified that after Schafer drove past, he saw Schafer pull into the driveway at 1630 Maplehurst. McGee followed and parked 20-30 feet behind him, also in the driveway. McGee then observed Schafer as Schafer put his car into drive and drove around the left side of his garage, proceeded through his own yard, and then through the yards of two other homes, before finally getting back onto the road.

{¶ 15} McGee testified that he activated his lights and siren and began his pursuit of Schafer's vehicle. During the pursuit, Schafer ran multiple stop signs, going up to 50-60 miles per hour through town and past a school, and then, later, up to 100 miles per hour, before finally getting away. McGee terminated the chase after he lost sight of Schafer's vehicle.

{¶ 16} At trial, McGee testified that Schafer's driver's license was under suspension at the time of the chase. He further testified that the only occupants of the car were Schafer and Schafer's dog. McGee identified the vehicle depicted in the Muehlfelds' videos and in the still photos admitted at trial as Schafer's vehicle.

**Roger Schafer**

{¶ 17} Roger Schafer took the stand and immediately denied that he lived at the 1630 Maplehurst address. He testified that he was, instead, fixing up the property at that address, so that he could later purchase it from the owner. He stated that he lived in Bryan, but made regular trips to Montpelier, Georgia, and Hamilton, Indiana. He testified that he had just returned from a trip to Georgia on March 3, 2025. He denied recalling the meeting that was depicted in the March 4, 2025 Muehlfeld videos and stated "I have

6.

twenty people work for me and they drive my vehicles. And the vehicle looks familiar but it doesn't look like me and I don't remember being in Montpelier at that day." In fact, he denied recalling any sort of interaction with his neighbors on the morning in question. As for his appearance in the video, Schafer stated, "I don't recollect any of that being me."

{¶ 18} Schafer then testified that he had, in fact, been in Montpelier on the morning of March 4, 2025, at the hardware store, but then later traveled to Angola, Indiana and "cleaned up some branches at a fraternity house." When asked if he had been at the residence at 1630 on the morning of March 4, 2025, he answered that he did not believe so.

{¶ 19} He was shown the photographs of the gray Infiniti and acknowledged that the car belonged to his company and that "somebody" had put the US-DOJ sticker on it. When reminded that he had stated in his police interview that he himself had put that sticker on because he was some type of whistleblower, he answered, "Possibly."

{¶ 20} Schafer denied that he drove the Infiniti on March 4, 2025, and stated that he had "twelve" other vehicles. He testified that he could not name any other possible drivers but that he had previously provided several names to law enforcement officers.

{¶ 21} At the end of the trial, Schafer's counsel stipulated that Schafer had a suspended driver's license on March 4, 2025.

7.

{¶ 22} The matter was sent to the jury for deliberations, and the jury found Schafer guilty of both counts charged. The question of forfeiture was never submitted to the jury, and so the jury made no finding on the matter.

## Sentencing

{¶ 23} At sentencing, the trial court imposed a term of incarceration of 30 months on the failure to comply conviction and a suspended sentence of 180 on the driving under suspension conviction. In addition, the trial court ordered that Schafer's vehicle be forfeited to the Montpelier, Ohio, police department.

## Assignments of Error

{¶ 24} On appeal, Schafer asserts the following assignments of error:

I.    Schafer's conviction for failure to comply is not supported by legally sufficient evidence or the weight of the evidence presented at trial.

II.   The trial court's forfeiture order is contrary to law because it failed to allow the jury to make the criminal forfeiture finding as required by R.C. 2981.04.

III.  The trial court's forfeiture order is contrary to law because it failed to conduct a proportionality review to ensure that the forfeiture did not amount to an excessive fine.

8.

<h3 style="text-align:center">Law and Analysis</h3>

**First Assignment of Error**

**{¶ 25}** Schafer argues in his first assignment of error argues that his conviction for failure to comply was not supported by legally sufficient evidence and was against the manifest weight of the evidence.

**{¶ 26}** "When reviewing the sufficiency of the evidence, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Ford*, 2021-Ohio-3058, ¶ 43 (6th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

**{¶ 27}** R.C. 2921.331, which governs the offense of failure to comply with an order or signal of a police officer, relevantly provides:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

**{¶ 28}** In challenging the sufficiency of the evidence, Schafer claims only that the State failed to prove that he was the person driving the vehicle.

**{¶ 29}** Here, three witnesses -- Denise Muehlfeld, Lt. Hern, and Chief McGee -- clearly identified that Schafer had been driving the gray Infiniti on the morning of March 4, 2025. McGee and Hern, in particular, each identified Schafer as the driver of the gray Infiniti vehicle that they had pursued during the police chase. The evidence is undisputed that the driver, while fleeing from police officers, whose lights and sirens were activated,

9.

committed multiple traffic violations, including running stop signs, speeding, and driving under a suspended license. In this case, any rational trier of fact could have found the essential elements of the offense of failure to comply -- including the element of identity -- beyond a reasonable doubt. Thus, the evidence supporting Schafer's conviction for such offense was legally sufficient.

{¶ 30} When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We do not view the evidence in a light most favorable to the prosecution. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 387. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist.1983).

{¶ 31} Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the fact-finder's credibility determinations, given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor.

10.

*State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). The finder of fact may believe or disbelieve all, part, or none of a witness's testimony. *State v. Caudill*, 2008-Ohio-1557, ¶ 62 (6th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67, (1964).

{¶ 32} In this case, the jury was presented with four witnesses from the State, along with multiple exhibits, showing that Schafer was driving the vehicle that officers chased on March 4, 2025. Schafer himself is the only witness who claims that he was not the driver. The jury, after listening to Schafer's testimony and police interview, was free to disbelieve Schafer's story. Upon weighing all of the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find that the jury clearly lost its way so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 33} Schafer claims in his second assignment of error that the trial court's forfeiture order is contrary to law because it failed to allow the jury to make the criminal forfeiture finding as required by R.C. 2981.04.

{¶ 34} "In a criminal forfeiture proceeding, where the specification was included in the charging instrument and the defendant pleads guilty to or is convicted of an offense, '*the trier of fact* shall determine whether the person's property shall be forfeited.'" (Emphasis added.) *State v. Cave*, 2015-Ohio-2233, ¶ 39 (4th Dist.), quoting R.C. 2981.04(B); *see also* R.C. 2941.1417(B) ("The trier of fact shall determine whether

11.

the property is subject to forfeiture."). "However, '[i]f the trier of fact is a jury, on the offender's…motion, the court shall make the determination of whether the property shall be forfeited.'" *Id.*, quoting R.C. 2981.04(B). "Before the final forfeiture adjudication, the State or a political subdivision holds 'provisional title to property subject to forfeiture,' permitting the State or political subdivision to seize, hold, and protect the property. *Id.* "Title to the property vests with the [S]tate or political subdivision when *the trier of fact* renders a final forfeiture verdict or order under section 2981.04 or 2981.05…." (Emphasis added.) *Id.*, quoting R.C. 2981.03(A)(1).

{¶ 35} Here, the jury did not make a finding of forfeiture pursuant to R.C. Chapter 2981, and Schafer made no motion to request that the trial court make the forfeiture determination. The State concedes the error in this case and agrees that it is appropriate for this court to vacate the forfeiture order. We also agree. Schafer's second assignment of error is therefore found well-taken.

**Third Assignment of Error**

{¶ 36} Schafer argues in his third assignment of error that the trial court erred when it failed to conduct a proportionality review to determine whether the forfeiture of Schafer's truck amounted to an excessive fine under the United States and Ohio Constitutions. We find that our determination of Schafer's second assignment of error, resulting in an order to vacate the forfeiture order, renders Schafer's third assignment of error moot. Accordingly, we find Schafer's third assignment of error not well-taken.

12.

**Conclusion**

**{¶ 37}** The judgment of the Williams County Court of Common Pleas is affirmed in part and reversed in part. Consistent with this opinion, Schafer's convictions are affirmed, but the forfeiture order relating to the gray Infiniti vehicle that was involved in this case is ordered vacated. Appellant and appellee are ordered to divide the costs of appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.